IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RANDY D. DAVID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-4013-CV-C-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION REVERSING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS
AND REMANDING FOR CALCULATION AND AWARD OF BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability benefits. The Commissioner's decision is reversed and remanded.

## I. BACKGROUND

Plaintiff was born in June 1964, completed four years of college, and earned an associate degree in general studies, an associate degree in respiratory therapy, and a certification as an LPN. He has prior work experience as respiratory therapist, stock clerk, welder/assembler, and data entry clerk. Plaintiff injured his right (dominant) arm in October 2010 after he fell off a ladder while trimming some trees. There is no doubt that his arm was severely injured and he required surgery and the implantation of plates, rods and pins. The issue is the degree to which he has recovered and the extent of the limitations that persisted.

The surgery was performed by Dr. Brett Crist at the University Hospital Orthopaedic Clinic on October 8, 2010. Plaintiff returned approximately one month later for suture removal; at that time, Plaintiff could "extend his thumb, make an okay sign, abduct and adduct his fingers." He exhibited decreased sensation and spasms in his

little finger, but his pain was "pretty well controlled." He was restricted to lifting three pounds and instructed to engage in range of motion exercises at home. R. at 215-16.

In December, x-rays revealed diminished bone density in the wrist, which was attributed to disuse. The CMC joint (a joint in the thumb) exhibited "degenerative changes." R. at 212-14. The doctor's notes from the visit (which reflect they were reviewed and approved by Dr. Crist) do not reflect any concerns arising from the x-ray (or otherwise). Plaintiff reported "continued elbow stiffness, and numbness in his ring and little finger on his right hand. Otherwise he has been doing well." The doctor removed the external fixation device and some of the pins. He recommended Plaintiff go to physical therapy, but after Plaintiff reported an inability to pay for therapy the doctor provided instructions for exercises Plaintiff should perform at home. R. at 318-19.

Plaintiff returned to the Orthopaedic Clinic in January 2011, complaining of pain in his shoulder and decreased range of motion. Swelling in the hand and stiffness in the elbow, wrist and fingers were noted. He was told to continue performing physical therapy at home and instructed to return in three to four months. R. at 275-76.

Plaintiff returned in May 2011. He reported improvement, although he was still experiencing "some pretty significant stiffness." Plaintiff's primary complaint was increased pain in his shoulder, but he was also experiencing an increased range of motion in the elbow and wrist. He also reported his application for Medicaid was pending, and if approved he would be able to participate in physical therapy. In the meantime, Plaintiff was instructed to continue physical therapy exercises at home and return in six months. R. at 282-83.

In August 2011, Plaintiff saw his regular physician, Dr. Julie Cahill, complaining that he felt depressed because he spent his day alone in his house while his fiancé went to work. Dr. Cahill prescribed Celexa. R. at 357.

In November 2011, Plaintiff saw Dr. Crist. By this time he had been approved for Medicaid and was going to a physical therapist. Plaintiff's shoulder was "getting better" but was still painful; Dr. Crist attributed this to "prolonged stiffness" in Plaintiff's elbow. There was no tenderness over Plaintiff's wrist or elbow. Plaintiff was unable to make a fist, which Dr. Crist attributed "to his prolonged wait for physical therapy." Dr. Crist

2

instructed Plaintiff to continue going to the physical therapist and return in two months. R. at 327-28.

The next day, Dr. Crist completed a Residual Functional Capacity ("RFC") Form. The form indicated Plaintiff could not lift more than ten pounds and could not use his hand repetitively for grasping, fine manipulation, repetitive motion, pushing and pulling arm controls, or engage in activities bilateral manual dexterity. The form does not make clear whether these limitations are due to pain or physical inabilities following surgery; Dr. Crist does indicate he believes Plaintiff's complaints of pain, that the decreased motion and function is an objective finding supporting the existence of pain, Plaintiff's ability to function is "further reduced" by pain, and Plaintiff would be expected to miss three or more days of work per month. Dr. Crist also indicated Plaintiff had not reported side effects from medication. R. at 305-08. In a letter accompanying the form, Dr. Crist recounted Plaintiff's treatment history and noted Plaintiff had "significant delay in his recovery due to [inability] to afford physical therapy" and was still recovering from this delay. He opined that Plaintiff could perform "a sedentary job as far as being able to sit, but [is] not able to use his right upper extremity in any capacity for prolonged periods of time, he cannot do any fine motor manipulation with his fingers or lift anything above ten pounds . . . ." R. at 309.

The administrative hearing was held in December 2011 – approximately two and a half weeks after the appointment with Dr. Crist. During the hearing, Plaintiff testified that he was unable to drive because his car was a manual transmission. R. at 29. He found it difficult to dress, brush his teeth, cook, write, or do anything requiring fine motor skills with his right hand. R. at 33. While he could not hold small objects (such as a pen) he could hold a coffee cup and, depending on the shape, any object weighing up to ten pounds. R. at 33-34. He experiences pain in his elbow, the edge of his hand, and his shoulder. Pain medication makes him drowsy; he spends most of his day watching television from his recliner and often falls asleep. Plaintiff testified he is depressed because he is alone at home while his fiancée works, and the combination of depression and drowsiness makes him not want to do anything. R. at 35-38.

The ALJ posed hypothetical questions to a vocational expert ("VE"). The first hypothetical asked the VE to assume a person of Plaintiff's age, education and

3

experience who was limited to sedentary work, could not clime ladders, ropes or scaffolds, needed to avoid exposure to unprotected heights and exposure to hazardous machinery, could not make a fist with the right hand or type, but could pinch, grasp and hold objects. Once the VE understood these limitations,[1] the VE testified such a person could not perform their past work but could perform various jobs such as touch-up screener, optical goods assembly jobs such as final assembler, and production assembler. R. at 40-41. In the second hypothetical, the ALJ asked the VE to add to the first hypothetical the fact that the person could not grasp objects; the VE testified such a person could not perform any work in the national economy. R. at 41-42. The third hypothetical was much like the second and resulted in a similar response from the VE. R. at 42-43. In response to a final question, the VE testified that all of her answers were consistent with the Dictionary of Occupational Titles. R. at 44.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

---

[1] The VE initially stated such a person could not work because they could not grasp objects. The VE corrected the answer, pointing out that the hypothetical assumed the person *could* grasp objects. Plaintiff seems to see this sequence in a sinister light, suggesting the ALJ changed the hypothetical because he did not like the VE's answer. Plaintiff's Brief at 12. The Record demonstrates otherwise: as originally stated, the first hypothetical asked the VE to assume the claimant could "pinch, and grasp, and hold objects." R. at 41.

4

accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A.

The ALJ determined Plaintiff's alleged depression did not constitute a severe impairment. The Court concludes there was no error in this finding. First, Plaintiff described himself as depressed and Dr. Cahill prescribed medication to improve his mood; there is no formal diagnosis of depression. Second, the Record does not suggest any functional restrictions due to depression. As described by Plaintiff, if he were able to leave the house he would not be alone and would not be depressed.

### B.

The ALJ found Plaintiff's testimony about the limiting effects of the surgery and associated pain were not credible. The ensuing explanation, however, focused on the ALJ's assessment of Dr. Crist's opinion – which the ALJ rejected because Dr. Crist indicated (1) Plaintiff could not use foot controls, (2) Plaintiff's ability to crawl was limited, and (3) Plaintiff was limited by fatigue and Plaintiff had not made any complaints about fatigue. For these reasons, the ALJ rejected the entirety of Dr. Crist's opinion. The Court concludes this decision was not supported by substantial evidence for the following reasons:

- A limitation on crawling is not inconsistent with the evidence, which demonstrates that Plaintiff was limited in his ability to use (including his ability to bear weight with) his right arm.
- The limitation on foot controls certainly is inconsistent with the evidence in the Record. This appears to have been an oversight, as it was the only question in a series of six that was not related to the arm or hand. Regardless, the appropriate response was to ignore the limitation, not to decide that everything the treating physician stated was false.

- In indicating Plaintiff would have a problem with fatigue, Dr. Crist wrote in a comment specifying the problem was with fatigue in right arm. There is no inconsistency; to the contrary, the notation is consistent with Dr. Crist's observations regarding Plaintiff's muscle strength and range of motion.
- The ALJ's decision to reject Dr. Crist's opinion is undermined by the wealth of other evidence relating to Plaintiff's surgery and subsequent treatment.

### C.

The ALJ discounted Plaintiff's credibility because he did not undergo physical therapy when directed to do so. Generally, the failure to follow a physician's advice is inconsistent with complaints of disabling pain. E.g., Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006). However, "[e]conomic justifications for the lack of treatment can be relevant to a disability determination." Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994). The Record establishes (or, at least, the ALJ did not reach a contrary finding) that Plaintiff could not afford physical therapy until he was approved for Medicaid. Once approved for Medicaid, Plaintiff commenced physical therapy. Under these circumstances, it was improper to discount Plaintiff's credibility based on his failure to pursue physical therapy immediately after it was prescribed.

### D.

Based on the report from May 2011, the ALJ found Plaintiff could pinch, grasp and hold objects. This is in incomplete description of what the examining doctor observed: Plaintiff was "able to pinch, grasp and hold things *between his . . . thumb and his index finger.*" R. at 283 (emphasis added). This does not reflect the normal ability to pinch, grasp or hold objects. Indeed, as late as November 2011 Plaintiff was still unable to make a fist – and was thus unable to pinch, grasp and hold objects smaller than his fist.

<u>E.</u>

The Record leaves no doubt that from October 2010 through at least the date of the hearing, Plaintiff's RFC was consistent with either the second or third hypothetical questions posed to the VE. Based on her testimony, then, Plaintiff was unable to work from October 2010 through at least the date of the hearing. As that time period is greater than one year, Plaintiff is entitled to benefits.

However, the Record also strongly indicates Plaintiff is not likely to be permanently disabled, and may even by this date be capable of working. Dr. Crist consistently emphasized the fact that Plaintiff's recovery was delayed by his inability to participate in physical therapy. Plaintiff began participating in physical therapy by the time of the hearing in November 2011 and had already seen improvement. Indeed, by the November 2011 appointment with Dr. Crist, his Plaintiff's pain had greatly dimished and his functional capability had shown some improvement. While this improvement may not have been enough to enable him to perform work as of that date, Plaintiff's continued participation in therapy may have restored sufficient functional capacity that he is now capable of working. Therefore, on remand the Commissioner shall solicit additional evidence to determine whether (and if so, when) Plaintiff's RFC improved after November 2011 to the point that Plaintiff can perform work in the national economy.

## <u>III. CONCLUSION</u>

For the reasons set forth above, the Commissioner's final decision is reversed, and the case is remanded for further proceedings as outlined in Part II.E.
IT IS SO ORDERED.

DATE: September 27, 2013

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT